**GREAT NORTHERN CORPORATION, Appellee,**

v.

**DAVIS CORE & PAD COMPANY, INC., Appellant.**

**Appeal No. 85–2485.**

United States Court of Appeals, Federal Circuit.

Jan. 6, 1986.

Thomas M. McKinley, Price, Heneveld, Huizenga & Cooper, Grand Rapids, Mich., for appellant. With him on brief was Daniel Van Dyke, Grand Rapids, Mich.

George H. Solveson, Andrus, Sceales, Starke & Sawall, Milwaukee, Wis., for appellee. With him on brief was Glenn O. Starke, Milwaukee, Wis.

Before MARKEY, Chief Judge, and RICH and KASHIWA, Circuit Judges.

RICH, Circuit Judge.

This appeal is from the April 24, 1985, judgment of the United States District Court for the Northern District of Georgia, 226 USPQ 541, holding valid and infringed all 4 claims of United States Patent No. 4,195,732 ('732 patent), filed February 28, 1978, for "Supporting and Spacing Member For Web Material Rolls," originally assigned to Great Northern Corp. (Great Northern) and Presto Products, Inc. (Presto), by Davis Core & Pad Co., Inc.'s (Davis Core) support member (Rollrider). Davis Core was also held liable to Great Northern for treble damages, yet to be assessed, together with pre-judgment interest, costs, and attorney fees because Davis Core's infringement was willful. We affirm.

*Background*

The '732 patent discloses a molded expanded polystyrene foam support for shipping rolls of web material such as cellophane. The support has indentations for receiving rolls and recesses in the side portions of those indentations and elsewhere allegedly to prevent the support from cracking during transportation by imparting flexibility to the support. The published Order of the trial court sets forth the claims in full together with extensive findings of fact and conclusions of law, all of which will be better understood when read in connection with the following drawings from the patent-in-suit and explanation thereof.

Fig. 1

Fig. 3

Fig. 4

Fig. 7

The invention, made by Norman H. Bell, an employee of Great Northern, provides a means for safely shipping rolls of web material 12 from the manufacturer to a user on a pallet 14 as shown in Fig. 1. Fig 3 shows the claimed spacing member or bar 10 having indentations 22 in which the rolls rest, or which rest on the rolls, separated by lands 24. The bottom rolls in the package rest on bars having flat bottoms and indentations only on the top side as shown in Fig. 7, bars used at the ends optionally having lips 28. Significant to the controversy here, members 10 are provided with numerous recesses 26 molded into the bars to increase their overall flexibility and ability to conform to the shape of the rolls. The extent of these recesses is best seen in Fig. 4 where they are shown in dotted lines. It is said that these recesses prevent cracking of the molded polystyrene foam bars during use under the weight of the stacked rolls of web material and the forces applied during transportation. In the finished shipping assembly as shown in Fig. 1, the twelve rolls of plastic or other web material, the spacing members, and the pallet are all secured together by strapping 18.

To indicate the nature of the defendant's Rollrider products we reproduce two figures from Patent No. 4,435,463 issued to Thomas A. Roellchen, assignor to Ace Polymers, March 6, 1984. These drawings closely resemble drawings in Ace's Rollrider sales literature.

FIG. 3

FIG. 4

Great Northern and Presto, a manufacturer of cellophane, worked together to develop the subject matter of the '732 patent, their work culminating in a test shipment in February and March of 1977 from Presto's plant in Wisconsin to its plant in Utah and back again.[1]

Davis Core began marketing the allegedly infringing Rollrider support after it was contacted by Thomas Roellchen of Ace Polymers in the fall of 1980, Ace Polymers then being a distributor for Presto.[2] The '732 patent issued April 1, 1980, and Great Northern demanded that Davis Core cease production of Rollrider in a letter dated March 25, 1982. This suit followed.

*Issues*

I. Whether the '732 patent is valid and enforceable.

II. Whether Davis Core's Rollrider infringes under the doctrine of equivalents.

III. Whether Davis Core's infringement was willful, making treble damages and the award of attorney fees appropriate.

I. *Validity of the '732 Patent*

A. 35 U.S.C. 102(b)

Davis Core contends that the '732 patent's subject matter was on sale and in public use more than one year before the February 28, 1978, filing date because, it alleges, foam supports that met all of the claim limitations were made in December of 1976 and January of 1977 and transfer-

---

1. Presto is not a party here because it assigned its rights in the '732 patent to Great Northern.

2. Great Northern chose not to sue Ace Polymers because the latter's net worth was negative.

red to Presto, not in a joint venture with Great Northern, without restriction and with intent to sell. Davis Core particularly points to the Utah shipment as evidence of a § 102(b) bar.

■ The district court found that all of the tests conducted before the critical one year bar date of February 28, 1977, had resulted in cracked supports and were failures. The Utah shipments, the court found, were made to test the recesses in the side portions of the indentations which were added in December of 1976 to eliminate cracking. Further modification in the number and size of recesses was made subsequent to the Utah test because slight damage to the recesses occurred. Testing continued until the summer of 1977. The district court concluded, correctly we hold, that the invention was not reduced to practice until after February 28, 1977, and, therefore, the testing prior to that date did not constitute a § 102(b) bar. *See Shatterproof Glass v. Libbey-Owens Ford Co.*, 758 F.2d 613, 622, 225 USPQ 634, 639–40 (Fed. Cir.1985); *Barmag Barmer Maschinenfabrik AG v. Murata Machinery, Ltd.*, 731 F.2d 831, 838, 221 USPQ 561, 566–67 (Fed. Cir.1984). *Cf. King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 860, 226 USPQ 402, 406 (Fed.Cir.1985). The '732 support was not reduced to practice until it was sufficiently tested to demonstrate that it would work for its intended purpose, *see,* e.g., *Shatterproof Glass*, 758 F.2d at 622, 225 USPQ at 640, and that did not occur, in our view, until a location for the recesses, as defined in the claims, was determined that eliminated the cracking problem.

### B. Anticipation, § 102

■ Anticipation requires the presence in a single prior art reference disclosure of every element of the claimed invention. *See, e.g., Lindemann Maschinenfabrik v. American Hoist and Derrick*, 730 F.2d 1452, 221 USPQ 481 (Fed.Cir.1984). The court's conclusion that Davis Core failed to prove anticipation is not clearly erroneous because none of the prior art satisfies this requirement.

### C. Obviousness, § 103

■ Davis Core relied upon numerous references, some before the Patent and Trademark Office (PTO) examiner and some not, to support its claim that the '732 subject matter failed to meet the nonobviousness requirement of § 103. The district court considered the scope and content of the prior art, the ordinary level of skill in the art, the differences between the claimed invention and the prior art, and the secondary considerations as required by *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966). We see no clear error in these findings and we agree with the district court's legal conclusion, based upon these findings, that the claimed subject matter would not have been obvious to one of ordinary skill in the art at the time the invention was made. The problem solved by the '732 subject matter—cracking of the supports—and the advantages gained—tolerance to rolls of various diameters—were peculiar to expanded polystyrene foam supports and were achieved by incorporating recesses in the side portions of the indentations in the foam supports, structure not shown or suggested by the prior art.

### D. Enforceability of the '732 Patent

■ Davis Core's argument that the '732 patent is unenforceable due to inequitable conduct during prosecution of the application for the patent is specious, *see generally, e.g., American Hoist and Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 220 USPQ 763 (Fed.Cir.1984), and we affirm the district court's conclusion that the '732 patent is not unenforceable.

## II. *Infringement*

### A. Doctrine of Equivalents

■ A device that performs substantially the same function in substantially the same way to obtain the same result as the patentee's product may be treated as an equivalent of what is claimed and therefore an infringement of the patent claims even

though a case of literal infringement is not established. *Graver Tank & Manufacturing Co. v. Linde Air Products Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097, 85 USPQ 328 (1949); *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 219 USPQ 473 (Fed.Cir.1983). A finding of equivalence is a finding of fact, *Graver Tank*, 339 U.S. at 609, 70 S.Ct. at 856, 85 USPQ at 331, reviewable under the clearly erroneous standard.

■ The district court concluded, and Great Northern does not dispute, that claims 1–4 were not literally infringed. The court found, however, based upon the testimony of Dr. Kufahl, an expert in packaging design with considerable experience in expanded polystyrene, that the Rollrider support is the equivalent of the '732 support. Davis Core did not provide any expert testimony on this issue. Although we cannot say that it is beyond question that Rollrider is an equivalent (its recesses are not in the load bearing surface but extend inwardly from the lateral side wall)—and we hesitate to expand this doctrine too far, to the point where patent counsel cannot rely at all on what the claims recite when advising on infringement—it is clear to us that the district court's finding of equivalency here is not clearly erroneous and we affirm this holding that Rollrider is an equivalent of the '732 support and does infringe claims 1–4 of the '732 patent.

## B. Prosecution History Estoppel

Davis Core argues, in effect, that Great Northern is estopped to argue a construction of the claims of the '732 patent broader than their literal meaning, and are thus precluded from application of the doctrine of equivalents. The argument is predicated on the theory that to adopt such a construction would be "impermissibly resurrecting subject matter surrendered during prosecution." While this principle is sound, after full consideration of the file history and Davis Core's analysis thereof, together with the disclosures of the references relied on by the examiner in making his rejections, we do not find it applicable

here. The examiner's rejections, in our view, were double and triple hindsight reconstruction rejections, and applicant did not clearly surrender anything specific by rewriting his claims.

■ The arguments revolve around the claim definitions of the locations of "recesses" and the only reference relied upon for a disclosure of recesses is Bixler et al. In our view, that reference does not disclose recesses, in the sense that term is used in the patent in suit, namely, voids in a solid object having the effect of increasing its flexibility in its thicker parts; Bixler does not disclose voids in a solid object. His packing for straight fluorescent electric light tubes is a molded, convoluted, thin-walled material similar to a molded paper-pulp egg box. In part, his packing is provided with V-shaped folds, described as "valleys," which extend in depth to one side of the packing, thus giving it flexibility along the apex of the V's. The final wording of the claims of the '732 patent, while clearly distinguishing from Bixler, as well as the other patent references the examiner cited in support of a rejection, did not constitute a surrender of all but the literal location of the recesses recited in claim 1 ("in the side portions of said indentations"). Consequently, we agree with the trial court's conclusion; there was no file history estoppel precluding a construction of claims that would read on Davis Core's structure.

## III. *Willfulness*

Davis Core challenges the trial court's finding of willful infringement and the award of treble damages and attorney fees, based upon Davis Core's failure to seek the advice of competent patent counsel when faced with notice of the '732 patent. The challenge is on the ground that Davis Core never had notice of the patent until after commencing manufacture, when it received the cease and desist letter of March 25, 1982.

■ We agree with the district court's finding that Davis Core learned of the ex-

istence of the '732 patent before it began manufacturing Rollrider. At the May 1980 meeting between Joel T. Davis of Davis Core and Thomas Roellchen of Ace Polymers, Roellchen inquired whether Davis Core wanted to manufacture Rollrider and advised that there was a similar patented product on the market but that the patent was invalid. Without more—and in fact there was not more because an infringement and validity opinion had not yet been sought—Davis Core began manufacturing Rollrider in November of 1981 or January of 1982. Nothing resembling such an opinion, *see generally, e.g., Rosemount, Inc. v. Beckman Instruments*, 727 F.2d 1540, 221 USPQ 1 (Fed.Cir.1984), existed until May of 1982. Davis Core had an affirmative duty, on the facts of this case, to obtain a validity and infringement opinion. *See generally, Machinery Corp. of America v. Gullfiber AB*, 774 F.2d 467, 472, 227 USPQ 368, 372 (Fed.Cir.1985). Its failure to fulfill that duty is clearly an adequate basis for the district court, in its discretion, to assess treble damages after the amount of damages is determined. *See* 35 U.S.C. § 284. That failure was also sufficient to support the finding that this case is exceptional under 25 USC 285, *see Reactive Metals Alloys Corp. v. ESM, Inc.*, 769 F.2d 1578, 1582–83, 226 USPQ 821, 824 (Fed.Cir.1985), and the district court did not abuse its discretion by awarding attorney fees.

For the above reasons, the judgment of the district court is in all respects *affirmed.*

Each party shall bear its own costs on this appeal.

AFFIRMED.